IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK STEPHEN RAMIREZ,<br><br>                Petitioner,<br><br>        vs.<br><br>JOE A. LIZARRAGA, Warden, Mule Creek State Prison,[1]<br><br>                Respondent. | No. 2:16-cv-02287-JKS<br><br>MEMORANDUM DECISION |

Mark Stephen Ramirez, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Ramirez is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at Mule Creek State Prison. Respondent has answered, and Ramirez has not replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On July 11, 2014, Ramirez was charged with infliction of corporal injury on a cohabitant (Count 1) and battery resulting in serious bodily injury (Count 2). The information further alleged eight prior convictions and prison terms. Ramirez pled not guilty, denied the allegations, and proceeded to a jury trial on October 6, 2014. On direct appeal of his conviction, the California Court of Appeal laid out the following facts underlying the charges against Ramirez and the evidence presented at trial:

> The victim fits the sad stereotype of a battered woman. While at the hospital receiving treatment for her head wound, she told the doctor, her daughters, and the investigating police officer that [Ramirez], angry she had been out all night, stabbed her with what she thought was a screwdriver. Her daughters, Tasha and Velecity, testified

---

[1] Joe A. Lizarraga, Warden, Mule Creek State Prison, is substituted for Dave Davey, former Warden, California State Prison, Corcoran. FED. R. CIV. P. 25(c).

she was terrified to return to the unit she shared with [Ramirez] in a duplex in which her daughter Tasha and grandchildren also resided. Velecity testified that her mom "kept saying over and over and over again how scared she was. He kept hitting her, hitting her, and hitting her. And the blood was running down her face into her eyes." She lived with Velecity for a almost week after release from the hospital, and Velecity's husband took a week off work to be with her. Nevertheless, once she began talking to [Ramirez] again, she recanted her statements and thereafter claimed the gash was self-inflicted. It was this version of events she gave at the preliminary hearing. She then married [Ramirez] and refused to testify at trial. The transcript of the preliminary hearing was read to the jury at trial.

While driving home from San Jose at about 10:00 p.m. on March 2, 2014, Tasha received a telephone call from her mother. A few moments after they hung up, the phone rang and the display indicated it was her mother again. She was unable to get her mother to respond, but she was able to hear some of what her mother screamed, including, " Oh, God. No. Please Mark. Please don't hit me. No." Tasha continued to listen until her battery ran out. She was afraid her mother was dead. She later received a voice mail message from her mother, who indicated it was an emergency. Tasha returned her mother's call, and [Ramirez's] daughter grabbed the phone and reported that Tasha's mom was hurt pretty badly and was en route to the hospital. Tasha and Velecity went directly to the hospital to be with their mother. The victim was covered in blood and appeared to Tasha to be "out of it."

The emergency room doctor did not observe signs of intoxication and did not order any blood tests. He did, however, order a CT scan. The victim complained of nausea, dizziness, and blurred vision, symptoms consistent with a concussion, and the doctor wanted to assess the severity of the head injury. According to the doctor, the laceration penetrated the full thickness of the victim's scalp; Velecity testified the injury was closed with five staples. She was released from the hospital a few hours after admission.

Several weeks later the police went to the victim's duplex to serve an arrest warrant on [Ramirez]. The victim denied that [Ramirez] was in the residence. The police found him hiding under some blankets between the bed and the wall in the bedroom. The victim did not protest or claim responsibility for the infliction of the injuries at that time.

*People v. Ramirez*, No. C077861, 2016 WL 2941960, at *1-2 (Cal. Ct. App. May 17, 2016).

At the conclusion of trial, the jury found Ramirez guilty as charged. The court held a bench trial on the prior convictions and prior prison term allegations. The prosecution moved to dismiss the first strike allegation, which was granted. The court found true the remaining prior

2

conviction allegations. The court sentenced Ramirez to a total imprisonment term of 18 years, including a 5-year enhancement for a prior conviction of making terrorist threats.

Through counsel, Ramirez appealed his conviction, arguing that: 1) the trial court committed reversible error when it failed to give the requested battery instruction as a lesser-included offense to Count 2; 2) the court erred in imposing a 5-year enhancement because the jury found that Ramirez inflicted "serious bodily injury" rather than "great bodily injury;" and 3) the judgment should be vacated and the case remanded for the trial court to separately list the amount of each monetary penalty it imposed. The Court of Appeal unanimously remanded Ramirez's case to the trial court to specify the nature and amount of each fine it intended to impose, but otherwise affirmed the judgment against Ramirez in its entirety. *Id*. at *5. Ramirez petitioned for review of both claims unsuccessfully brought before the Court of Appeal. The California Supreme Court summarily denied review on July 27, 2016.

Ramirez then timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on September 12, 2016. Docket No. 1 ("Petition"); *see* 28 U.S.C. § 2244(d)(1)(A).

II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Ramirez raises the following three grounds for relief. First, Ramirez argues that trial counsel was ineffective for failing to call the victim to testify that she did not receive stitches for her injuries and that Ramirez assaulted her with a cigarette lighter rather than a screwdriver. He next contends that the trial court erred in failing to instruct the jury on the lesser included offense of simple battery. Finally, Ramirez avers that the trial court improperly imposed a 5-year enhancement because the jury found that he had inflicted "serious bodily injury" rather than "great bodily injury."

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."  *Id.* at 412.  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.  *Early v. Packer*, 537 U.S. 3, 10 (2002).  Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.  *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied).  It is a fundamental precept of dual federalism that the states possess primary

authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Ramirez has not replied to Respondent's answer. The relevant statute provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248; *see also Carlson v. Landon*, 342 U.S. 524, 530 (1952). Where, as here, there is no traverse filed and no evidence offered to contradict the allegations of the return, the court must accept those allegations as true. *See Phillips v. Pitchess*, 451 F.2d 913, 919 (9th Cir. 1971).

## IV. DISCUSSION

**Ground 1.** *Ineffective Assistance of Counsel*

Ramirez first argues that trial counsel was ineffective for failing to call the victim to testify that she did not receive stitches for her injuries and that Ramirez assaulted her with a cigarette lighter rather than a screwdriver. As an initial matter, Respondent correctly argues that Ramirez failed to exhaust this claim before the state courts. This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). To be deemed exhausted, a claim must have been presented to the highest state court that may consider the issue presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To have properly exhausted his state court remedies, Ramirez must have presented both the legal arguments and the factual basis to the highest state court. *See Peterson v. Lampert*, 319 F.3d 1153, 1155-56 (9th Cir. 2003). Ramirez raises this claim for the first time in the instant Petition; it is thus unexhausted.

This Court could stay the Petition and allow Ramirez to return to state court to satisfy the exhaustion requirement. *See Mena v. Long*, 813 F.3d 907, 911 (9th Cir. 2016). However, Ramirez has not requested that this Court stay and hold his Petition in abeyance. Moreover, the Supreme Court has held that it is an abuse of discretion to stay a petition pending exhaustion where: 1) the petitioner has not show good cause for failing to exhaust all available state court remedies; and 2) the unexhausted claim is "plainly meritless." *Rhines v. Weber*, 544 U.S. 269, 277 (2005). In his Petition, Ramirez provides no reason why he did not seek relief through a habeas petition to the state court.

Moreover, the unexhausted claim is "plainly meritless;" even if Ramirez had fully exhausted it, he would not be entitled to relief on it. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that appellate counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht* harmlessness standard. *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009). Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Ramirez must show that counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability that,

but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

Ramirez fails to satisfy his burden with respect to either of the prongs. Ramirez argues that trial counsel was ineffective for failing to call the victim to testify that she did not receive stitches for her injuries and that Ramirez assaulted her with a cigarette lighter rather than a screwdriver. The record, however, reflects that the victim was declared unavailable for trial because she had invoked her right not to be compelled to incriminate herself in spite of an offer of immunity and a threat of judicial contempt sanctions. Ramirez thus fails to show that counsel did not attempt to call the victim, or that the victim would have testified if counsel had called her as a witness.

Moreover, he fails to demonstrate that such testimony, even if it had been given, would have resulted in a better outcome. Notably, the parties stipulated that the victim had visited the prosecution and recanted her earlier statement by explaining that she had inflicted her injuries upon herself. The jury apparently did not believe her recantation, and there is no reason to believe that the jury would have believed any additional recantation she may have made on the stand. Likewise any conceivable benefit Ramirez would have received from the testimony would be largely inconsequential as the charges did not require that the victim receive stitches or depend on the instrument that Ramirez used to inflict injury. Ramirez is thus not entitled to relief on this claim in any event.

**Ground 2.**   *Instructional Error*

Ramirez additionally argues that the trial court erred by not instructing the jury with CALCRIM No. 960, which he argues would have allowed the jury to find him guilty of the lesser included offense of battery.  The United States Supreme Court has held that the failure to instruct on a lesser included offense in a capital case is constitutional error if there was evidence to support the instruction. *Beck v. Alabama*, 447 U.S. 625, 638 (1980).  The Supreme Court, however, has not decided whether to extend this rationale to non-capital cases.  The Ninth Circuit, like several other federal circuits, has declined to extend *Beck* to find constitutional error arising from the failure to instruct on a lesser included offense in a non-capital case.  *See Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000); *Windham v. Merkle*, 163 F.3d 1092, 1106 (9th Cir. 1998) ("[T]he failure of a state trial court to instruct on lesser included offenses in a non-capital case does not present a federal constitutional question."); *James v. Reese*, 546 F.2d 325, 327 (9th Cir. 1976) ("Failure of a state court to instruct on a lesser offense fails to present a federal constitutional question and will not be considered in a federal habeas corpus proceeding.").  Accordingly, the decisions of the California courts denying Ramirez relief as to this claim are not contrary to United States Supreme Court authority as set forth in *Beck*.

Nevertheless, the Ninth Circuit has stated that "the refusal by a court to instruct a jury on lesser included offenses, when those offenses are consistent with defendant's theory of the case, may constitute a cognizable habeas claim" under clearly established United States Supreme Court precedent.  *Solis*, 219 F.3d at 929.  But Ramirez has not established any basis for the giving of the instruction.  As the Court of Appeal explained in rejecting this claim on direct appeal, "[g]iven the gravity of the injury as evidenced by the concussion and suturing, there is

substantial evidence defendant committed the greater offense and no substantial evidence that if the jury found he committed a battery it could have found that he did not inflict serious bodily injury." *Ramirez*, 2016 WL 2941960, at *3. That conclusion is both reasonable and fully supported by the record. Thus, Ramirez's claim must also fail here.

**Ground 3.** *Sentencing Error*

Finally, Ramirez avers that the trial court improperly imposed a 5-year enhancement because the jury found that he had inflicted "serious bodily injury" rather than "great bodily injury." The Court of Appeal considered and rejected this claim on direct appeal as follows:

> [Ramirez] next asserts the trial court violated his constitutional right to a jury trial by imposing a five-year serious felony enhancement under Penal Code section 667, subdivision (a). It is true that the charged felonies are not listed in the 41 categories of serious felonies set forth in subdivision (c) of section 667, but a serious felony described in subdivision (c)(8) also includes "[a]ny felony in which the defendant inflicts great bodily injury on any person other than an accomplice . . . ." Although the jury expressly found that [Ramirez] inflicted a serious bodily injury, he complains the jury did not find that he inflicted "great bodily injury." We agree with the Attorney General that, under the facts presented here, the two concepts are synonymous and the trial court committed no error by imposing the enhancement.
> 
> [Ramirez] argues that under the logic of *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435] and its progeny, all facts that are legally essential to the determination of an offender's current offense must be determined by a jury. (*Id.* at p. 490; *Blakely v. Washington* (2004) 542 U.S. 296, 303 [159 L.Ed.2d 403].) Because the trial court enhanced [Ramirez's] punishment without a jury's finding that he inflicted great bodily injury, [Ramirez] urges us to strike the five-year enhancement. He contends that the "closely analogous" United States Court of Appeals, Ninth Circuit opinion in *Dillard v. Roe* (9th Cir.2001) 244 F.3d 758 (*Dillard*) supports his position. The facts in *Dillard* are not at all analogous. Nor did the Ninth Circuit rely on *Apprendi*; indeed, the court expressly distanced itself from the holding. (*Dillard*, at p. 773, fn. 19.) In short, the case is easily distinguished and does not support the proposition that a jury finding of serious injury is not equivalent to a finding of great bodily injury.
> 
> Let us begin with the most blatant distinction. A jury convicted Dillard of inflicting corporal injury upon a cohabitant (Pen.Code, § 273.5, subd. (a)), but it did not, as here, convict Dillard of battery resulting in serious bodily injury (*Dillard*, supra, 244 F.3d at p. 761). In order to enhance Dillard's sentence, the judge had to find he personally used a gun, a finding the jury had not made. (*Id.* at p. 771.) The Ninth Circuit concluded "that the additional fact found by the trial judge in this case is an element that

transforms the offense for which Dillard was charged and convicted into a different, more serious offense that exposes him to greater and additional punishment. Accordingly, we agree with the district court that Dillard's constitutional rights were violated when the state trial judge imposed the two five-year sentence enhancements without having a jury determine beyond a reasonable doubt that Dillard 'personally used a firearm' in the commission of the offense against [the victim]." (*Id.* at p. 773.)

       The jury also convicted [Ramirez] of inflicting corporal injury upon a cohabitant. But commission of that offense alone does not qualify as a serious felony and justify imposition of an enhancement. Here, unlike in *Dillard*, the jury made the critical additional finding that [Ramirez] inflicted serious injury when he battered his victim. We reject the notion that the trial court's finding that Dillard personally used a firearm is in any way similar to the court's utilization here of the jury's finding he inflicted serious injury and thus that he inflicted great bodily injury. *Dillard* bears no relevance to the case before us.

       Because the jury, not the judge, made the essential finding upon which [Ramirez's] enhancement was based, the issue is whether a finding of "serious injury" is equivalent to a finding of "great bodily injury." [Ramirez] insists there is a wide chasm in meaning. Persuasive authority is to the contrary. As a general rule, the terms "'serious bodily injury'" and "'"great bodily injury"'" are essentially equivalent. (*People v. Wade* (2012) 204 Cal. App. 4th 1142, 1149; *see People v. Moore* (1992) 10 Cal. App. 4th 1868, 1871; *see also People v. Johnson* (1980) 104 Cal. App. 3d 598, 610; *see also People v. Kent* (1979) 96 Cal. App. 3d 130, 136–137.)

       *People v. Taylor* (2004) 118 Cal. App. 4th 11, cited by [Ramirez], is an aberration. It, too, accepts the fundamental proposition that a jury finding of serious bodily injury is equivalent to a finding of great bodily injury. (*Id.* at p. 22.) The unique problem in *Taylor*, however, was that the jury found the defendant had inflicted serious bodily injury but also found, for enhancement purposes based on the same conduct, he had not inflicted great bodily injury. Faced with an express jury finding the defendant had not inflicted great bodily injury, instructions that provided different definitions for serious and great bodily injury, and the arguments of counsel distinguishing the two, the court held the imposition of the enhancement violated the defendant's right to a jury trial. (*Id.* at p. 30.)

       We are not confronted with conflicting jury findings or instructions distinguishing the two concepts. To the contrary, the jury was presented with overwhelming evidence that the victim's injuries were significant and substantial. As described above, the emergency room doctor testified the victim suffered a concussion and an approximate four centimeter, Z-shaped subcutaneous laceration, which had penetrated all layers of skin down to the connective tissue on the top of her scalp. She required five staples to close the wound to her head. The jury found that these were serious injuries and they made no contrary findings, nor were there any confusing or conflicting instructions. We therefore must follow the general rule that a jury finding of serious bodily injury constitutes a finding of great bodily injury, and the five-year enhancement was not based on a finding by the court in violation of [Ramirez's] right to a jury trial.

*Ramirez*, 2016 WL 2941960, at *3-5.

Ramirez fares no better on federal habeas review. The thrust of Ramirez's argument is that the jury's finding beyond a reasonable doubt that Ramirez inflicted "serious bodily injury" was not sufficient to satisfy the enhancement's requirement of a finding beyond a reasonable doubt of "great bodily injury." But that argument raises an issue governed solely by California law that is not cognizable on federal habeas review. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002). A "state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (noting that a state appellate court's determination of state law is binding and must be given deference). This Court is bound by the appellate court's determination that the jury's finding of "serious bodily injury" was equivalent to "great bodily injury" under California law. Ramirez's claim therefore also must fail on federal habeas review.

V. CONCLUSION AND ORDER

Ramirez is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: December 13, 2018.

                                           /s/James K. Singleton, Jr.
                                           JAMES K. SINGLETON, JR.
                                           Senior United States District Judge